# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Diawain Adams, | Case No. 14-cv-977 (MJD/TNL) |
| Plaintiff, | |
| v. | |
| Minnesota Department of Corrections, | |
| Thomas Roy,<br>Commissioner of the Department of Corrections, | **REPORT &<br>RECOMMENDATION** |
| Yvonne Lerro-Miller, | |
| Sara Hard,<br>Director of Health Services, | |
| Ellie Fuller, | |
| Lori Groby, | |
| N. Connolly, and | |
| Jean Nichole Jakubik, | |
| Defendants. | |

Gary M. Hazelton, Hazelton Law Firm PLLC, 677 Anne Street Northwest, Suite B, Bemidji, MN 56601, and Mark N. Stageberg, 5101 Thimsen Avenue, Suite 201, Minnetonka, MN 55345 (for Plaintiff); and

Eric V. Brown, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101-2128 (for Defendants Minnesota Department of Corrections, Thomas Roy, Sara Hard, Ellie Fuller, and Lori Groby and Defendants Yvonne Lerro-Miller, N. Connolly, and Jean Nichole Jakubik in their official capacities only).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on State Defendants' Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 14). This motion has been referred to the undersigned magistrate judge for a report and recommendation to the district court, the Honorable Michael J. Davis, Chief District Judge of the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b).

A hearing was held. Mark N. Stageberg appeared on behalf of Plaintiff Diawain Adams. Eric V. Brown appeared on behalf of Defendants Minnesota Department of Corrections ("MNDOC"); Thomas Roy, Commissioner of the Department of Corrections; Sara Hard, Director of Health Services; Ellie Fuller; and Lori Groby as well as Defendants Yvonne Lerro-Miller, N. Connolly, and Jean Nichole Jakubik in their official capacities only (collectively, "Defendants").[1]

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that State Defendants' Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 14) be **GRANTED**.

---

[1] At the time Defendants filed their motion, the Minnesota Attorney General's Office, did not

> represent Defendants N[.] Connolly, Jean Nichole Jakubik, or Yvonn [sic] Lerro-Miller in their *individual* capacities and thus cannot respond on their behalf. N[.] Connolly ha[d] not requested indemnification from the State. It is Defendants' understanding that [Adams] has not yet served Yvonn [sic] Lerro-Miller and Jean Nichole Jakubik and these individuals have also not requested indemnification from the State.

(Defs.' Mem. in Supp. at 1 n., ECF No. 151 (emphasis added).) Following the hearing on Defendants' motion, Connolly "requested and received indemnification [from the State of Minnesota]" and the State answered on Connolly's behalf. (Answer of Def. Connolly, ECF No 27.)

## II. BACKGROUND[2]

This lawsuit arises out of events occurring in 2010 when Adams was incarcerated at the Stillwater, Minnesota correctional facility ("MCF-Stillwater"). (Compl. ¶¶ 1, 9, 12, ECF No. 1.) In the spring of 2010, Adams sought medical attention from MCF-Stillwater's Health Services unit. (*Id.* ¶ 10.) Adams was evaluated by Defendant Yvonne Lerro-Miller, a certified medical assistant. (*Id.* ¶ 11.) At or about the same time, Lerro-Miller "made unwanted sexual advances to [Adams] and [began] supply[ing] illegal and hal[lucinogenic] drugs to [Adams]." (*Id.* ¶ 11.)

Up until the fall of 2010, Lerro-Miller "promoted an aggressive, sexual relationship with [Adams], including touching, oral sex, and intercourse." (*Id.* ¶ 12.) "[O]n many occasions when [Lerro-Miller] initiated the sexual advances, [Adams] was high and under the influence of . . . and affected by the improper drugs provided to him." (*Id.* ¶14.) Adams subsequently became addicted to these drugs. (*Id.* ¶ 24.) Lerro-Miller also told Adams that she wanted to have his child and ultimately became pregnant. (*Id.* ¶¶ 15, 17; *see id.* ¶ 21.) During this time, Lerro-Miller coerced Adams "to continue providing . . . sexual favors to [her]" by threatening to claim that Adams had sexually assaulted her. (*Id.* ¶ 13). Lerro-Miller's conduct was reported that fall and she eventually pleaded guilty to third-degree criminal sexual conduct. (*See id.* ¶¶ 25, 26.)

Adams alleges that certain employees in MCF-Stillwater's Health Services unit—Defendants Ellie Fuller, Lori Groby, N. Connolly, and Jean Nichole Jakubik—knew of

---

[2] "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

Lerro-Miller's improper conduct and failed to report it to their supervisors—Defendants Sara Hard, Director of MCF-Stillwater's Health Services, and Thomas Roy, Commissioner of the Department of Corrections. (*Id.* ¶¶ 4, 19, 20, 21, 22.) Adams further alleges "[t]hat for months while the aforementioned improper and illegal activity was occurring[, . . . Director Hard and Commissioner Roy] failed to investigate, intervene, and require reporting of [Lerro-Miller's] improper and illegal activity . . . ." (*Id.* ¶ 23.) Once Lerro-Miller's conduct was brought to light, Adams alleges that "Commissioner [Roy] and the [c]orrections [o]fficers at [MCF-Stillwater] . . . verbally and physically abused [him], blamed [him] for the sexual encounters, . . . and denied him wanted and needed legal medications for [his] on-going head[ache] problem." (*Id.* ¶ 25.)

Adams brings claims against Defendants in their individual and official capacities[3] for (1) violations of his civil rights under the Fourth, Fifth, Eighth, and Fourteenth

---

[3] Adams's Complaint explicitly states that Commissioner Roy and Director Hard are being sued in their individual and official capacities. (Compl. ¶¶ 2, 3.) It is less clear with respect to Lerro-Miller, Fuller, Groby, Connolly, and Jakubik. (*See* Compl. ¶¶ 4, 5, 8, 28.)

> Claims under § 1983 may be made against a defendant in either an individual or official capacity. Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.

*Hester v. Redwood Cnty.*, No. 11-cv-1690 (ADM/JJK), 885 F. Supp. 2d 934, 943 (D. Minn. 2012) (quotations and citations omitted). If a complaint "is silent about the capacity" in which the defendant is sued or "does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (quotations omitted). In any event, Adams has conceded that the Eleventh Amendment bars claims against the MNDOC and its employees in their official capacities. (Pl.'s Br. in Opp'n at 1, ECF No. 20) *See King v. Dingle*, No. 08-cv-5922 (ADM/RLE), 702 F. Supp. 2d 1049, 1069 (D. Minn. 2010) ("[T]he Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, as well as State Agencies, because such lawsuits are essentially for the recovery of money from the state." (quotation omitted)).

Amendments pursuant to 42 U.S.C. §§ 1983 and 1985[4] (Counts I, II, VI); negligence (Counts III, IV, VII); and respondeat superior (Count V).

## III. MOTION FOR PARTIAL DISMISSAL

Defendants move for partial dismissal of Adams's Complaint. Defendants assert that all claims against the MNDOC and its employees in their official capacities are barred by the Eleventh Amendment.[5] (Defs.' Mem. in Supp. at 4-6.) Additionally, Defendants assert that Adams's claims against Commissioner Roy and Director Hard in their individual capacities lack sufficient facts showing their personal involvement in the alleged constitutional violations and therefore fail to state a claim upon which relief can be granted. (*Id.* at 1-2, 7-11.)

In his responsive memorandum and at the hearing, Adams conceded that the claims brought against MNDOC and its employees in their official capacities are barred by the Eleventh Amendment. (*See* Pl.'s Br. in Opp'n at 1.) Accordingly, the Court recommends that these claims be dismissed. In light of Adams's concession, the only remaining issue before the Court is whether Adams has sufficiently pleaded his claims against Commissioner Roy and Director Hard in their individual capacities.

---

[4] In his Complaint, Adams's second count is titled: "Count II, Violation of 42 U.S.C. Section 1988." Presumably, Adams's reference to § 1988 in the title is a typographical error and Adams's intended reference was to § 1985. Section 1988 governs certain aspects of civil-rights proceedings whereas § 1985 provides a cause of action arising out of a conspiracy to violate a person's civil rights. *Compare* 42 U.S.C. § 1985 ("[c]onspiracy to interfere with civil rights) *with* 42 U.S.C. § 1988 ("[p]roceedings in vindication of civil rights").

[5] Initially, Defendants state that "[a]ll of [Adams's] claims against MNDOC, and *all six MNDOC employees* in their official capacities, are barred by the Eleventh Amendment, and therefore must be dismissed." (Defs.' Mem. in Supp. at 1 (emphasis added).) There are seven MNDOC-employee defendants and it appears that this was a typographical error as, in the argument section, Defendants later state that the Eleventh Amendment bars official-capacity claims against all seven MNDOC-employee defendants. (Defs.' Mem. in Supp. at 5.)

### A. Legal Standard

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d. 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The court may, however, "consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Id.* (quotations and citation

omitted); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." (quotation omitted)).  "[D]ocuments 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).  "[T]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."  *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation omitted).  Accompanying Adams's opposition is an affidavit of counsel containing four investigative reports and an incident report.  (*See generally* Aff. Identifying Exs., ECF No. 21)  The Court has not considered these reports in its analysis.  They are not matters of public record and are not embraced by the pleadings.  The Court will not presume to place itself in the role of Adams's attorneys by hypothesizing how the information contained in those reports may have been pleaded in the Complaint.

### B. Analysis

For his federal civil-rights claims, Adams alleges that Commissioner Roy and Director Hard "failed to investigate, intervene, and require reporting of the improper and illegal activity of . . . Lerro-Miller."  (Compl. ¶ 23; *see id.* ¶¶ 33, 34, 50.)  Adams also alleges that "Commissioner [Roy] . . . verbally and physically abused [him], blamed [him] for the sexual encounters, further denying his civil rights, and denied him wanted

and needed legal medications for [his] on-going head[ache] problem." (*Id.* ¶ 25; *see id.* ¶ 28.)

Adams has alleged only that Commissioner Roy's direct action violated his civil rights. (*See id.* ¶¶ 25, 28.) The Court's analysis of Adams's § 1983 claims is complicated by the fact that neither party distinguishes between those claims involving an alleged failure by both Commissioner Roy and Director Hard to supervise MCF-Stillwater employees and the allegation that Commissioner Roy directly participated in the alleged constitutional violations.[6] For ease of analysis, the Court will separate the supervisory allegations from those alleging Commissioner Roy's direct involvement.

### 1. § 1983 Supervisory Claims

"While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014); *accord Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). The Court construes Adams's allegations in Counts I and VI that Commissioner Roy and Director Hard failed to investigate, intervene, and require the reporting of Lerro-Miller's conduct and that such

---

[6] Adams briefly summarizes these allegations regarding Commissioner Roy's direct actions in his opposition. (Pl.'s Br. in Opp'n at 16.) *See infra* Section III(B)(2).

inaction amounted to deliberate indifference as claims for the failure to supervise properly MCF-Stillwater employees. (*See* Compl. ¶¶ 27-31, 50-52.)

In order to hold a supervisor individually liable for a violation of a plaintiff's constitutional rights perpetrated by an employee on the basis of inadequate supervision, the plaintiff must show that the supervisor (1) "[r]eceived notice of a pattern of unconstitutional acts committed by subordinates"; (2) "[d]emonstrated deliberate indifference to or tacit authorization of the offensive acts"; (3) "[f]ailed to take sufficient remedial action"; and (4) "[t]hat such failure proximately caused injury to [the plaintiff]." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (quotation omitted); *accord Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (same). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he or she might see." *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011) (quotation omitted). "A supervisor can act with deliberate, reckless indifference even she does not act knowingly. A supervisor can be found liable under § 1983 for deliberate indifference if she is aware of a substantial risk of harm, even if she is not aware that the harm has, in fact, occurred." *Id.* (quotations and citations omitted). A supervisor is deliberately indifferent to or tacitly authorizes the offending acts if he or she "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews*, 98 F.3d at 1078. The Court assumes for purposes of this motion only that the conduct of MCF-Stillwater employees Lerro-Miller, Fuller, Groby, Connolly, and Jakubik violated Adams's constitutional rights.

9

There are no allegations in the Complaint that either Commissioner Roy or Director Hard were aware of (1) a pattern of sexual relationships between MCF-Stillwater employees and inmates, (2) a pattern of MCF-Stillwater employees supplying inmates with drugs or medications in excess of the prescribed does, or (3) a substantial risk of such improper conduct occurring.  There are no allegations that either Commissioner Roy or Director Hard had notice that the supervision of Health Services employees at MCF-Stillwater was inadequate.

Moreover, there are no allegations that Commissioner Roy or Director Hard were aware of either the sexual relationship or the provision of drugs and medication that occurred in this case and failed to act.  In pertinent part, the Complaint states as follows:

> 19. That for months starting in the spring of 2010, when . . . Lerro-Miller engaged in the sexual conduct with [Adams], Defendants, . . . *Fuller*, . . . *Groby*, . . . *Connolly*, and . . . *Jakubik*, *where* [sic] *fully aware* of the improper sexual contact of . . . Lerro-Miller with [Adams].
>
> 20. That for months starting in the spring of 2010, Defendants, . . . *Fuller*, . . . *Groby*, . . . *Connolly*, and . . . *Jakubik*, *were fully aware* that . . . Lerro-Miller was supplying drugs and excess doses of medication to [Adams], for reasons other than treating a medical condition.
>
> . . .
>
> 22. That for months, Defendants, . . . *Fuller*, . . . *Groby*, . . . *Connolly*, and . . . *Jakubik*, *failed to report* the improper conduct of . . . Lerro-Miller *to supervisors*, [Director Hard and Commissioner Roy].
>
> 23. That for months while the aforementioned improper and illegal activity was occurring the Health Services department, Defendants, [Director Hard and Commissioner Roy], failed to

> investigate, intervene, and require the reporting of the improper and illegal activity of . . . Lerro-Miller.
>
> . . .
>
> 25. *That once the afore-mentioned improper and illegal conduct was disclosed in the fall of 2010 . . . .*

(Compl.) Adams's pleading specifically states that only Fuller, Groby, Connolly, and Jakubik knew about Lerro-Miller's conduct for months and failed to report it, and such conduct went unreported until the fall of 2010. Thus, until the reporting of Lerro-Miller's conduct in the fall of 2010, Commissioner Roy and Director Hard had no knowledge of it. Adams states that "Lerro-Miller's sexual and excessive drug involvement with [him], was known to health care workers *and [Director] Hard* for months before any active investigation." (Pl.'s Br. in Opp'n at 9 (emphasis added).) The Complaint, however, contains no facts to support this assertion.

Adams cites *DeGidio v. Perpich*, Civ. No. 4-84-352, 612 F. Supp. 1383 (D. Minn. 1985) (Murphy, J.), and *Hines v. Anderson*, No. 4-73 Civ. 387, 439 F. Supp. 12 (D. Minn. 1977) (Larson, J.), arguing that these cases identify duties owed to inmates by the Commissioner of Corrections, and by chain of command those who oversee prison healthcare, to establish and maintain minimum health and safety standards and ensure that these standards are met. (Pl.'s Br. in Opp'n at 10-15.) Notably, each of these cases involved allegations of broad policy decisions that led to the alleged deliberate indifference of the inmates' medical needs in violation of the Eighth Amendment. *DeGidio*, 612 F. Supp. at 1390 ("Construing plaintiffs' complaint in the most favorable light, however, it states a claim against those in charge of the prison and of public health

11

for their alleged policy decision not to segregate [tuberculosis-]infected inmates."); *Hines*, 439 F. Supp. 12 (discussing medical care generally); *see also DeGidio*, 612 F. Supp. at 1387 (noting the consent decree in *Hines* "covers the topic of medical care generally"). As the Eighth Circuit stated in *Jackson*, "[e]ven if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." 747 F.3d at 543 (quotation omitted); *see also id.* ("The authority of the state DOC director to make prison-wide policy decisions may be sufficient to give rise to liability under § 1983.") Adams has not alleged any sort of deficient policy here. Therefore, *DeGidio* and *Hines* are inapposite. *See Pittman v. Jesson*, No. 12-cv-1410 (SRN/TNL), 2014 WL 4954286, at *14 (D. Minn. Sept. 30, 2014) ("Pursuant to *Jackson v. Nixon*, a government official may only be held liable for a concrete policy decision that is unconstitutional.").

Based on the foregoing, the Court concludes that Adams has failed to plead the personal involvement of Commissioner Roy and Director Hard in the alleged constitutional violations and, therefore, recommends the dismissal of Adams's § 1983 claims brought against them in their individual capacities as the supervisors of the MCF-Stillwater employees alleged to be involved in the constitutional violations.

### 2.  § 1983 Claim for Commissioner Roy's Direct Action

Adams alleges that "Commissioner [Roy] and the Corrections Officers at [MCF-Stillwater] verbally and physically abused [him], blamed [him] for the sexual encounters, further denying his civil rights, and denied him wanted and needed legal medications for

[his] on-going head[ache] problem." (Compl. ¶ 25.) Commissioner Roy does not separately address these allegations in connection with the present motion. Adams states only that his allegation that he "suffered further civil[-]rights violations by retaliation by prison officials and the withholding of his needed medications" after Lerro-Miller's conduct was discovered "alone is sufficient to survive the 12(b)(6) motion." (Pl.'s Br. in Opp'n at 16.)

Eighth Amendment claims encompass allegations of excessive force as well as allegations related to prison conditions, "includ[ing] threats to an inmate's health and safety." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The Court construes the direct allegations made against Commissioner Roy as violations of Adams's rights under the Eighth Amendment. (*See Compl.* ¶¶ 25, 28, 29, 51.)

"Eighth Amendment claims are analyzed in light of the specific claim raised." *Irving*, 519 F.3d at 446. Beginning with Adams's allegations of verbal and physical abuse, "[g]enerally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). The Complaint does not contain any factual allegations addressing what Commissioner Roy allegedly said to Adams that constituted "verbal[] . . . abuse[]." (Compl. ¶ 25.) There are no allegations that Commissioner Roy threatened Adams's life. *See Irving*, 519 F.3d at 448-49 (finding death threats to prisoner by prison guard actionable under the Eighth Amendment); *see also Burton v. Livingston*, 791 F.2d 97, 100-01 (8th Cir. 1986) (allegations that "prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for

redress, terrorized [prisoner] with threats of death" stated § 1983 claim for violation of First and Fourteenth Amendment rights).

As to Adams's allegation of physical abuse, "[e]xcessive force claims involve the direct infliction of harm upon inmates." *Irving*, 519 F.3d at 446. "It is well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (quotation omitted). But, "[b]ecause the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically. Even with such motivation, not every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is repugnant to the conscience of mankind, does." *Irving*, 519 F.3d at 446 (quotation omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)).

As the Supreme Court recently observed, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam); *accord Williams*, 600 F.3d at 1012 ("The Supreme Court recently clarified that the extent of any resulting injury, while material to the question of damages, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." (citing *Wilkins*, 559 U.S. 34)). "[T]he core judicial

inquiry is not whether a certain quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Williams*, 600 F.3d at 1012 (quotations omitted)); *accord Irving*, 519 F.3d at 446 ("In excessive force claims, the subjective inquiry is whether the force was used in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." (quotation omitted)).

Adams alleges that he was "physically injured," but does not describe what the alleged injuries entail. (Compl. ¶ 30.) Even assuming Adams's injury is more than *de minimis*, Adams has failed to state an Eighth Amendment claim. There are simply no factual allegations from which the Court can infer the requisite subjective intent of Commissioner Roy. *See Williams*, 600 F.3d at 1012, 1014 (emphasizing "allegations of purposefulness and retaliation"); *Irving*, 519 F.3d at 446 (allegations showed "no legitimate penological purpose could have been served by defendants' conduct, and their actions toward [inmate] demonstrated a state of mind that was not merely deliberately indifferent, but also sadistic and malicious"); *cf. Wilkins*, 559 U.S. at 38 (inmate alleged "he was punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation" (alteration in original)). Indeed, there are no factual allegations stating what *actually* happened to Adams. There are no factual allegations stating what Commissioner Roy's purported involvement in the alleged assault was. Adams has literally pleaded the "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[N]aked assertions devoid of further factual enhancement" do not suffice. *Id.* (quotation omitted).

15

With respect to Adams's allegation that Commissioner Roy denied him medical treatment, a claim for deliberate indifference to one's medical needs under the Eighth Amendment requires a plaintiff to demonstrate (1) "an objectively serious medical need," and (2) "the defendant actually knew of, but deliberately disregarded, such need." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009).  "[W]hile a deliberate-indifference claim requires the establishment of a defendant's actual, subjective knowledge, such knowledge can be demonstrated with circumstantial evidence." *Id.*  Assuming for purposes of this motion that Adams's "on-going head[ache] problem" is a serious medical need, there are no factual allegations that Commissioner Roy was actually aware of Adams's medical need or that circumstances were such that Commissioner Roy's knowledge of Adams's medical need can be inferred. *See Vaughn*, 557 F.3d at 909 n.5 ("A prison official cannot be held liable for deliberately disregarding the serious medical needs of an inmate without proof of his actual knowledge of that serious medical need."). In fact, it is not even clear from the Complaint that the "painful physical problem" prompting Adams to seek treatment in the Health Services unit at MCF-Stillwater is the same "on-going head[ache] problem" for which Commissioner Roy allegedly denied Adams medical treatment. (*Compare* Compl. ¶ 9 *with* ¶ 25.)  In sum, Plaintiff has failed to allege facts from which it can be plausibly inferred that Commissioner Roy was deliberately indifferent to his medical needs.

Therefore, to the extent that Adams alleges that Commissioner Roy has violated Adams's Eighth Amendment rights by his own direct action, as opposed to failing to

supervise MCF-Stillwater employees, the Court recommends that these claims be dismissed for failure to state a claim.

### 3. § 1985 Conspiracy Claim

Adams also brings claims against Commissioner Roy and Director Hard pursuant to 42 U.S.C. § 1985 for conspiring to deprive him of his civil rights. (Compl. ¶¶ 32-36.) Adams alleges that Commissioner Roy and Director Hard "conspired to violate [his] civil rights" by "failing to intervene or take any affirmative action for several months while having knowledge of the acts of . . . Lerro-Miller which were openly being inflicted upon [him]." (*Id.* ¶ 33.) Adams alleges that "the conspiracy of silence and inactivity by [Commissioner Roy and Director Hard] failed to prevent a continuing violation of [his] civil rights." (*Id.* ¶ 34.)

Section 1985 provides a civil action for conspiring to deprive a person of his or her civil rights. 42 U.S.C. § 1985(3).

> In order to prove the existence of a civil rights conspiracy under § 1985(3), [Adams] must prove: (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States."

*Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (quoting 42 U.S.C. § 1985(3)); *accord Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012) (same). "The 'purpose' element of the conspiracy requires that [Adams] prove a class-

17

based 'invidiously discriminatory animus.'" *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989) [hereinafter *City of Omaha*] (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 102 n.10 (1971)); *accord Davis*, 685 F.3d at 684-85 (same).

"Moreover, [Adams] must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. [H]e can satisfy this burden by pointing to at least some facts which would suggest that [the defendants] reached an understanding to violate [his] rights." *City of Omaha*, 883 F.2d at 652 (quotations and citation omitted).

> A mere allegation of conspiracy is insufficient to state a claim. Allegations that identify the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose and allegations that identify which defendants conspired, how they conspired and how the conspiracy led to a deprivation of constitutional rights have been held to be sufficiently particular to properly allege a conspiracy.

*Steshenko v. Albee*, No. 13-CV-04948-LHK, ___ F. Supp. 2d ____, 2014 WL 2111676, at *9 (N.D. Cal. May 20, 2014) (quotations and citations omitted).

Assuming again for purposes of this motion only that a deprivation of Adams's civil rights occurred, Adams's civil-rights-conspiracy claims against Commissioner Roy and Director Hard still fail. First, there are no factual allegations showing a discriminatory animus on the part of any defendant, including Commissioner Roy and

Director Hard.[7]  Second, there are no factual allegations showing that Commissioner Roy and Director Hard reached an agreement or understanding with each other or any other defendant in this matter to violate Adams's civil rights.  Adams alleges only that Commissioner Roy and Director Hard (as well as the other defendants in this matter) *did the same thing*—nothing.  (*See* Compl. ¶¶ 33, 34.)  Without any facts plausibly showing an agreement or understanding reached by Commissioner Roy and Director Hard with each other or with any other defendant in this matter, Adams's allegation of conspiracy is merely conclusory.  *See Iqbal*, 556 U.S. at 678.  Accordingly, Adams has failed to allege the personal involvement of either Commissioner Roy or Director Hard in a conspiracy to deprive him of his civil rights.  *See Steshenko*, 2014 WL 2111676, at *9 (dismissing § 1985(3) claim where plaintiff "plead[ed] no facts to support his conspiracy claim" and provided only conclusory allegation that defendants conspired to violate his civil rights).  Therefore, the Court recommends that Adams's § 1985 claims against Commissioner Roy and Director Hard be dismissed for failure to state a claim.

[Continued on next page.]

---

[7] The Complaint refers to Lerro-Miller as "want[ing] a 'Mocha Baby.'" (*Compl.* ¶ 15; *see id.* ¶ 21.)  There are no factual allegations in the Complaint identifying the race of Adams or Lerro-Miller.  In his opposition, Adams states that he is African American and Lerro-Miller is Caucasian.  (Pl.'s Br. in Opp'n at 10.)  The Complaint does not allege racial animus on the part of any defendant or suggest that racial animus played any role in the alleged violations of Adams's constitutional rights.

# IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that State Defendants' Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 14) be **GRANTED** and the following claims be dismissed: all claims against the MNDOC; all claims against MNDOC employees in their official capacities; and Counts I, II, and VI against Commissioner Roy and Director Hard in their individual capacities.


Dated: January     29    , 2015                     *s/ Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    for the District of Minnesota


                                                    *Adams v. Minn. Dep't of Corr. et al.*
                                                    Case No. 14-cv-977 (MJD/TNL)


# NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 13, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Eighth Circuit Court of Appeals.